| | | |
|---|---|---|
| **KELLY WAYNE HANCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **3:04-cv-160** |
| | ) | |
| **NORFOLK SOUTHERN RAILWAY** | ) | |
| **COMPANY,** *et al*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

The plaintiff, Kelly Wayne Hance ("Hance"), brings a claim of discrimination under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 *et seq.* ("USERRA"), against his former employer for unlawful and wrongful termination. Previously, the Court dismissed two counts of plaintiff's three count complaint. Defendant railroad company, Norfolk Southern Railway Company ("NSRC"), and defendant trainmaster, O. Rick Webster ("Webster"), pursuant to Fed. R. Civ. P. 56, now move this Court to grant summary judgment as to the remaining count of the complaint [Doc. 47]. The plaintiff has opposed the motion in its response, and the defendants have replied. For the reasons that follow, defendants' motion for summary judgment is **DENIED**.

## BACKGROUND

As the law requires, all disputed facts and inferences are resolved most favorably

1

to the plaintiff. Furthermore, the Court merely provides an abridged summary of facts for the purposes of this opinion.

Mr. Hance enlisted in the National Guard in December of 1996 and commenced employment at NSRC in May of 1999 as a conductor-trainee. As an employee conductor of NSRC, Mr. Hance's employment was at all times subject to the terms of a Collective Bargaining Agreement ("CBA"), including provisions regarding employee discipline; NSRC's operating rules; and also the Norfolk Southern System Teamwork and Responsibility Training ("START") policies and procedures.

In January of 2000, Mr. Hance established seniority in the Knoxville District. However, in August of 2000, he was placed on furlough status. Subseqently, Mr. Hance requested and was transferred to the Appalachia District, under the supervision of Mr. Webster. Shortly thereafter, NSRC claimed that Mr. Hance did not comply with applicable policy and procedures regarding absences and reporting to work. In October of 2000, Mr. Hance was released from work. The defense articulates the release was predicated upon Hance's unacceptable work record. Plaintiff challenged his release from work by filing a grievance through his United Transportation Union ("UTU") representative. However, it appears that the grievance was denied on grounds that Mr. Hance had not been technically disciplined.[1] The defense also asserted that Mr. Hance had failed to follow specific training instructions and that Mr. Hance had excessive lay-offs under false pretenses of military

---

[1]The record reflects that Mr. Hance had not been disciplined by NSRC during his employment until he was charged with insubordination on July 30, 2001.

duty. Mr. Hance subsequently filed a complaint with the Veterans Employment and Training Service ("VETS"); however, this was ultimately unsuccessful.

Some nine months later in June of 2001, Mr. Hance applied for a second voluntary transfer to the Appalachia District. At the time, Mr. Hance was still on furlough. In response, the Appalachia District, the same district that had previously released Mr. Hance, approved Mr. Hance's transfer. On July 12, 2003, Mr. Hance reported to Mr. Webster.[2] He arrived with a representative from the military guard, Master Sergeant Harold Morrison, who communicated to Mr. Webster that Mr. Hance would be leaving for summer military training scheduled between July 14th and July 29th of 2001. Mr. Hance characterizes the meeting as intense and that Mr. Webster was hostile toward him. He further states that Mr. Webster refused to accept paperwork related to his military training from Master Sergeant Morrison. Before the conclusion of the meeting, Mr. Webster instructed Mr. Hance to report to Andover, Virginia at 7:00 a.m. on July 30, 2001, the day after his military training ended.

After the meeting, Mr. Hance asserts that he contacted James Clark, who was the general chairman of the UTU, to seek clarification regarding Mr. Webster's instruction to report on July 30, 2001. According to Mr. Hance, Mr. Clark told him that he did not have to report on July 30, 2001 and that he could remain on furlough. Mr. Hance then stated that he would rather not report to Andover, Virginia on July 30, 2001. In response, Mr. Clark told Mr. Hance that he would take care of the situation.

---

[2]After confusion regarding what time Mr. Hance was to report on July 11, 2001, Mr. Webster told Mr. Hance to report for duty the next day at 9:00 a.m. on July 12, 2001.

On July 30, 2001, Mr. Hance did not report to Andover, Virginia at 7:00 a.m, and, after an investigation, NSRC found that Mr. Hance was guilty of a charge of insubordination. Thereafter, Mr. Hance was dismissed from service on August 23, 2001. Mr. Hance opposed the actions taken and pursued his available remedies, ultimately filing a complaint in this District Court.

Count III of Mr. Hance's complaint alleges that he was wrongfully cited for insubordination by NSRC on July 30, 2001; he was wrongfully discharged in August of 2001 in violation of USERRA; and that defendants ignored the established policies and general practices of NSRC regarding furloughed employees. In his brief, the plaintiff presents several arguments to support his assertion of discrimination. He also offers explanations to justify his position.

First, plaintiff produces a letter dated December 12, 2000 from G.E. Mills, the UTU local chairman, to P.E. Gibson, which states the following:

> There was a statement made to me by Trainmaster Webster about
> Trainman Hance before any [dispute arose] [t]hat he did not think that
> Trainman Hance worked enough, that he did not f[o]llow instructions and
> that he was off to[o] much on milit[a]ry time.

Next, Mr. Hance asserts that Paul Emmert, the assistant UTU chairman, notified him that the officials at NSRC were "mad at him because he was taking too much time off for military."

4

Plaintiff also indicates that he did not believe that he was required to report on July 30, 2001 and/or notify Mr. Webster of changed plans. He asserts that his travel to Andover, Virginia would be unpaid, and there was no guarantee of work. Moreover, Mr. Hance states that he relied upon assurances from Mr. Clark that he was relieved from reporting to duty with no other responsibility. Further, Mr. Hance argues that he was ineligible to report to duty. NSRC's policies state that individuals who are returning to duty from a work absence of six months or longer are required to have a complete medical examination. As the record reflects, Mr. Hance had been absent from work longer than six months. For the above reasons, Mr. Hance asserts to the Court that he was wrongfully terminated on account of discriminatory motives.

## LAW APPLICABLE TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6thCir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6thCir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule

56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6thCir.1996).

## MOTION FOR SUMMARY JUDGMENT AND APPLICABLE LAW

USERRA was enacted to protect employees involved in the uniformed services from employer discrimination on account of their membership and/or activities in such military service. [3] The stated purposes of USERRA are: (1) to encourage non-career service in the uniformed services by elimination or minimizing the disadvantages to civilian careers and employment, which can result from such service; (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers,

---

[3] USERRA's predessesor was the Vietnam Era Veterans' Readjustment Allowance Act of 1974 ("VEVRAA"), which was defined by the Supreme Court as to be "enacted for the significant *but limited* purpose of protecting the employee-reservist against discrimination like discharge and demotion, motivated *solely* by reserve status." *Monroe v. Standard Oil Co.,* 452 U.S. 549, 559, 69 L.Ed. 2d 226, 101 S.Ct. 2510 (1981) (*emphasis added*). After the *Monroe* decision, Congress decided to broaden the protection of uniformed service men and women in its enactment of USERRA. As the current uniformed service men and women anti-discrimination relief act, USERRA's scope is very broad, covering discrimination in initial employment, reemployment, retention of employment, and promotion. *Curby v. Archon,* 216 F.3d 549, 557 (6thCir. 2000). Furthermore, USERRA does not require the plaintiff's military involvement to be the *sole* motivating factor for any adverse action. *Id.* at 556-57.

their fellow employees, and their communities, by providing for the prompt re-employment of persons upon their completion of such service; and (3) to prohibit discrimination against persons because of their service in the uniformed services. 38 U.S.C. §4301; *see also Curby*, 216 F.3d at 556.

For purposes of this motion, USERRA first mandates that a person who is a member of a uniformed service shall not be denied retention of employment on the basis of the uniformed service membership, performance of service, application of service, or obligation. 38 U.S.C. §4311(a). Second, an employer may not discriminate in employment against or take any adverse action against any person because such person has exercised a right as provided for in USERRA's chapters. 38 U.S.C. §4311(b). Lastly, under USERRA, an employer shall be considered to have engaged in actions prohibited under §4311 subsection (a) of the Act, if the person's membership, application for membership, service, application of service, or obligation for service in the uniformed services is a *motivating factor* in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service. 38 U.S.C. §4311(c)(1)(*emphasis added*).

The term "motivating factor" means that if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military position or related obligations. *Robinson v. Morris Moore Chevrolet-Buick, Inc.*, 974 F.Supp. 571, 576 (E.D.Tex.1997) (citing *Price*

*Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989) (addressing Title VII gender discrimination claim and related affirmative defense)).   In other words, if NSRC "relied upon, took into account, considered, or conditioned its decision" on Mr. Hance's reservist status, then the reservist status was a motivating factor.  *Id.*

The absence of direct evidence of improper motivation is not fatal to the plaintiff's case.  *Tagget v. Eaton Corporation*, 2001 U.S. Dist. LEXIS 18389, *12 (E.D.Mich. 2001). Discriminatory motive may be proven by either direct or circumstantial evidence. *See Sheehan v. Dept. of Navy*, 240 F.3d 1009, 1014 (Fed.Cir. 2001).  Because direct evidence rarely exists, discriminatory motivation may be reasonably inferred from a variety of factors. These factors include:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Id.*

In a motion for summary judgment, the plaintiff must establish a *prima facie* case by coming forth with some evidence, direct or circumstantial, that creates a triable issue that his reservist status was "a motivating factor," even if it was not the *sole* factor, to withstand summary judgment dismissal.   *Curby*, 216 F.3d at 557; and *Tagget*, U.S. Dist. LEXIS 18389, at *12 (*emphasis added*).  Under USERRA, the Federal Circuit held that both the

8

burden of production and the burden of persuasion shift to the defendant employer once the *prima facie* case has been established.[4]  *Sheehan,* 240 F.3d at 1014; and *Tagget*, U.S. Dist. LEXIS 18389, at *14. In other words, the defense must prove the nonpretextual, permissible reason for termination notwithstanding uniformed service as an affirmative defense.  *Tagget*, U.S. Dist. LEXIS 18389, at *14.  In determining pretext, the question is whether the employer defendant honestly believed its reason for the adverse employment action.  *Clune v. Desmond Formal Wear, Inc.*, 2003 U.S. Dist. LEXIS 14634, *25 (N.D.Ind. 2003).

In the instant case, the Court finds that the plaintiff produced sufficient evidence to establish a *prima facie* case of discriminatory motive.  As noted above, discriminatory motivation may be reasonably inferred from a variety of factors.  The plaintiff has presented evidence that his employer expressed hostility toward him during the July 12, 2001 meeting.  Not only did plaintiff describe the meeting as hostile and intense, but the defendant refused to take the military documentation regarding the summer training.  Also, Mr. Hance's termination was within close proximity of his military activity.  Indeed, Mr. Hance was immediately charged with insubordination and terminated after his summer training.  Further, there are some inconsistencies between the proffered reason and other actions of the employer.  For example, the same district that released Mr. Hance only nine months earlier for an alleged unacceptable work record, approved Mr. Hance's request to

---

[4]The analysis of a USERRA action and a Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1) are different.  Under a Title VII analysis, the plaintiff is to establish the *prima facie* case, then only the burden of production shifts to the employer to offer a nondiscriminatory reason for the adverse employment action.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L.Ed. 2d 668, 93 S.Ct. 1817 (1973).

work again in their district.  These are all factual assertions that present sufficient disagreement to require submission to the jury.[5]  In summation, the Court holds that while the plaintiff may not prevail at trial, the plaintiff's factual theories are not wholly implausible and that a rational trier of fact might resolve the issues raised by defendants' motion in favor of the plaintiff.  As such, this matter will proceed to trial.


## CONCLUSION


For the reasons hereinabove set forth, defendants' motion for summary judgment [Doc. 47] is **DENIED.**


**IT IS SO ORDERED.**


**ENTER:**


s/Thomas W. Phillips_____
United States District Judge

---

[5]The defense argues that plaintiff's explanation of his failure to report of July 30, 2001 involving Mr. Clark's instruction is deemed inadmissible hearsay.   Further, defense argues that Mr. Emmert's comments to Mr. Hance regarding  alleged discriminatory motives , as well as Mr. Mill's December 12, 2000 letter regarding potential discriminating comments against Mr. Hance, are self-serving, inadmissible hearsay, and/or unsubstantiated.  However, the Court finds that this evidence is not needed to deny summary judgment.